## Case No. 9,629.

### MINER v. HARBECK.

[1 Abb. Adm. 546.]

District Court, S. D. New York. June, 1849.

SEAMEN —WAGES — DISCHARGE BY CONSUL — ENTRIES HOW MADE.

Where a United States consul in a foreign port discharges a seaman without payment of

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

three months' wages, (under 5 Stat. 395, § 1), the discharge will not avail the owner as a defence to a suit for the two months' wages, which by the provisions of the act accrue to the seaman, unless the consul makes an official entry of his act both upon the list of the crew and upon the shipping articles. These entries must be made by the consul personally.

This was a libel in personam by Lewis Miner against William H. Harbeck to recover wages as seaman.

BETTS, District Judge. The libellant shipped at this port on July 8, 1848, on board the brig Susan, on a voyage to the south of Europe, thence to one or more ports in South America, and thence to such other ports or places as the master might direct, for a term not exceeding twelve calendar months. The ship went to Lisbon, and thence to Rio Janeiro, when the captain chartered her to the coast of Africa, and back to Rio Janeiro.

On December 21, 1848, the libellant (with others of the crew) was there discharged at his own request and by consent of the master, and his wages were paid him in full to that day; and the same day he shipped on board the bark Elvira Harbeck, owned by the same persons, for the United States.

There is no ground of claim in the case other than for three months' wages because of the discharge at Rio Janeiro. The libellant left the brig from choice, and the respondent had no agency in his discharge other than the assent of the master to it. It was not procured or suggested by him. The libellant can maintain no claim for wages to the time of his return to the United States, because his term of service had not then expired, and he would have been bound to offer to remain with the brig to the end of twelve months. The equity of his claim, therefore, clearly rests on the effect of his discharge according to the provisions of the statute.

By section 3 of the act of February 28, 1803 (2 Stat. 203), the discharge of a seaman abroad by his own consent, subjects the master to the payment of three months' wages, two of which enure to the benefit of the seaman himself. The act of July 20, 1840 (5 Stat. 395, § 6), so far varied this regulation as to authorize a discharge, on mutual consent of the master and mariner, by a consul abroad, without payment of the three months' wages, if the consul thinks it expedient not to require such payment.

But the discharge is of no efficacy unless the consul makes an official entry thereof upon the list of the crew and the shipping articles. 5 Stat. 395, § 7. This formality was not observed in the present case. The master testifies that the discharge was authorized and made by the consul, but only one certificate, that to the crew list, was given, and that was executed by a deputy, and not by the consul personally.[1]

This is not a compliance with the conditions of the statute, and, therefore, cannot avail the owner as a legal defence to the action. The defect is merely technical, for the proof is uncontradicted that the consul acted personally in the matter, that the libellant desired his discharge and accepted his pay, and that the consul fully approved the arrangement.

Still, under the circumstances, the libellant is in law entitled to recover the two months' wages demanded, the allotment of them to seamen on such discharges not being specially for their benefit, but in furtherance of the national policy of deterring masters of vessels from leaving seamen abroad. He is, however, equitably bound to account for his earnings on board the Elvira Harbeck, and if they equal the $36 payable at Rio Janeiro, they will extinguish his demand, and must be applied to its satisfaction. He may accordingly, at his option, have a reference to ascertain the amount of wages paid him by the latter vessel, and if it was less than $36, take a decree against the respondent for the balance.

Decree accordingly.

---

[1] On the effect of a formal and valid consular discharge as a protection to the master and owners, see Lamb v. Briard [Case No. 8,010];

Tingle v. Tucker [Id. 14,057]. For other defects in the form of a consular certificate, see The Atlantic [Id. 620].

